UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| LARRY DONALD DIXON, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 3:17CV519-PPS |
| | ) | |
| NANCY BERRYHILL, Acting Commissioner | ) | |
| of the Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Larry Donald Dixon appeals the denial of his application for social security disability benefits. Stephens was 49 years old on the date he alleges he became disabled. An administrative law judge found that Dixon retains the residual functional capacity to perform light work with certain limitations. [AR at 16-17.][1] The ALJ found that Dixon has severe impairments of affective disorder, degenerative joint disease of the left shoulder, degenerative disc disease of the lumbar spine, and uncontrolled hypertension. [AR at 14.] Dixon previously worked as a golf course groundskeeper and a well drill operator helper. [AR at 21.]

Dixon asks me to reverse the ALJ's decision and remand for further proceedings. My review of the ALJ's decision is deferential. I must affirm it if it is supported by substantial evidence, meaning "'such relevant evidence as a reasonable mind might

---

[1] The administrative record [AR] is found in the court record at docket entry 12, and consists of 669 pages. I will cite to the pages of this AR according to the Social Security Administration's Bates stamp numbers rather than the court's Electronic Case Filing page number.

accept as adequate to support a conclusion.'" *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (citation omitted). I can't reweigh the evidence or substitute my judgment for that of the ALJ. *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015). But these standards do not mean that I "will simply rubber-stamp the Commissioner's decision without a critical review of the evidence." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

When considering the evidence, "an ALJ is not required to provide a complete and written evaluation of every piece of testimony and evidence, but 'must build a logical bridge from the evidence to his conclusion.'" *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015), quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005). This means that an ALJ's decision must offer an explanation of the rationale from the evidence to his or her conclusions "sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the claimant] meaningful judicial review." *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014).

## Discussion

### Mental Health Listings

A determination of disability results from the conclusion that one or more impairments "meet(s), medically equal(s), or functionally equal(s)" the listed impairments in social security regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1. Impairments meeting the listing criteria conclusively establish disability. *See* 20 C.F.R. §416.920(a)(4)(iii). Here the ALJ concluded that Dixon "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the

listed impairments." [AR at 14.] Dixon's first argument is that the ALJ's conclusion in this regard is not supported by substantial evidence.

The ALJ considered one listing in the area of mental health, namely Listing 12.04 for Affective Disorders and found that Dixon's impairments did not meet or equal its criteria. [AR at 14-16.] Dixon argues that the ALJ erred by failing to consider Listing 12.08 for Personality Disorders, when the medical record contains the medical opinion of treating specialists finding that Dixon met the requirements of the listing.

At Four County Counseling Center, Dixon was a patient of Gary Allan, a psychiatric mental health nurse practitioner, who is a Doctor of Nursing Practice. Allan worked under the supervision of Dr. Kathleen Miller, a psychiatrist. Allan completed a Psychiatric Review Technique form and a Mental Residual Functional Capacity Assessment which Dr. Miller also signed. [AR at 513-525, 527-529.] That form contains the opinion that Dixon met the requirements of Listing 12.08 for Personality Disorders. [AR at 520, 523.] Dixon argues that the ALJ's failure to make any mention of, let alone analyze, Listing 12.08 is an error that requires reversal.[2] I agree.

"In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than perfunctory analysis of the listing." *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015), quoting *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004). Without any reference to Listing

---

[2] Allan and Miller also found that Dixon met the requirements of Listing 12.04, contrary to the ALJ's own conclusions. [AR at 516, 523.] But Dixon's argument does not focus on this discrepancy.

3

12.08, the ALJ rejected the opinions he attributed only to Allan, giving them "very little weight." [AR at 16.] Similarly, before me, the Commissioner ignores the argument that the ALJ failed to consider Listing 12.08. Instead, the Commissioner merely defends the little weight given to the opinions attributed to Allan. [DE 22 at 4-5.]

The ALJ then, and the Commissioner now, point out that Allan, a nurse practitioner, is not an "acceptable medical source" under applicable regulations, and was not a consultant designated by the Commissioner. [AR at 16; DE 22 at 5.] But Dr. Miller *is* an acceptable medical source, and the ALJ did not explain or support his failure to attribute the opinions to her. The ALJ construed Dr. Miller's signature as a "countersigning" rather than "co-signing." To countersign a document is "[t]o write one's own name next to someone else's to verify the other signer's identity." Black's Law Dictionary, 7th ed., p. 354. In this circumstance, to construe Dr. Miller's signature as a "countersignature" is not sensible. Why would she be verifying Allan's signature? On the contrary, I see no reason to construe Dr. Miller's signature as anything other than reflecting her adoption of Allan's analysis and conclusions concerning Dixon's mental health.

Understood in that way, the ALJ had opinion evidence of a treating physician which he ignored in making critical findings concerning the disability listings. This supports a remand for further consideration. In any event, even without the signature of Dr. Miller, the governing regulations and the caselaw in this circuit recognize that the opinions of treating nurse practitioners are "important and should be evaluated on key

4

issues such as impairment severity and functional effects." *Gerstner v. Berryhill*, 879 F.3d 257, 262 (7th Cir. 2018) quoting SSR 06-03P, 2006 WL 2329939 (Aug. 9, 2006). I next consider whether the ALJ gave good reasons for discounting the opinions expressed by Allan and adopted by Dr. Miller.

The most petty of reasons given by the ALJ for assigning little weight to Allan's and Miller's opinions is that a portion of the form (relating to the 'paragraph C' criteria of the Listings) was completed when it was unnecessary. [AR at 16.] But there is no inconsistency in the additional information and opinions recorded in that portion of the form, and no reasonable basis for discounting the views expressed because *more* than the requisite information was given.

More substantively, the ALJ says that Allan's opinion is "inconsistent with the claimant's reported functioning by himself and others, and it is inconsistent with his psychiatric treatment and response to such treatment." [AR at 16.] The ALJ's only examples are observations in the Four County treatment notes that on May 12, 2015 Dixon reported "doing pretty good with medicine" and that he went mushroom hunting [AR at 20, 657], and that on December 12, 2014 Dixon reported "better energy and more ambition/energy to accomplish tasks when taking medication" [AR at 20, 580]. But in the later of these two visits, NP Allan also noted a number of symptoms and conditions entirely supportive of his assessment of Dixon's overall mental state, including that he was dysthymic with restricted affect, had negativistic thought process, occasional fleeting suicidal ideations, marginal attention and concentration, marginal

5

insight and judgment, continued to avoid social contacts, and his self-esteem remained low. [AR at 657.] And on the earlier occasion, Allan's notes also included that Dixon often remained negativistic in his thinking, continued to avoid social interactions, had occasional fleeting suicidal ideations, and that Dixon's attention, concentration, insight and judgment were all only "marginal." [AR at 579-80.] The term "cherry picking" is over-used in the context of social security appeals, but is applicable here to describe the ALJ's paltry support for his dismissal of these treater's opinions.

The ALJ's isolated examples of positive general feedback are also insufficient to counter the detailed conclusions made in support of Allan and Miller's findings as to Listing 12.08 on the subject of impairment in social or occupational functioning:

> A pervasive pattern of social inhibition, feelings of inadequacy and hypersensitivity to negative valuation. This is present in all contexts, socially and work related. He avoids any occupational activities that involve significant interpersonal contact because of fears of criticism, disapproval by others and rejection. Interpersonal relationships are very restrained due to fear of being shamed or ridiculed. He is preoccupied with being criticized and rejected. He is very shy and inhibited. He feels inferior to others and thus will not take risks or perform tasks for fear of embarrassment or ridicule.

[AR at 520.] Allan and Miller further conclude: "Mr. Dixon is not able to function well outside of his home. His ability to function in any setting around unfamiliar people is severely impaired to the point of emotional paralysis. His fear of rejection or criticism impedes his ability to perform tasks." [AR at 525.]

In support of the functional capacity assessment, Allan and Miller offer this analysis:

6

> Mr. Dixon has significant impairment due to a combined Dysthymic Disorder (DSM-5 Persistent Depressive Disorder) and Avoidant Personality Disorder.  His condition includes poor ability to maintain relationships, both personal and in work environments.  Low self-esteem, fears of criticism, disapproval, rejection are paramount.  He is not able to form any interpersonal interactions due to intense shyness.  Even intimate relationships, which are very limited, show restraint for fear of and in anticipation of rejection.  He is preoccupied with being criticized in social & work settings.  His inhibition centers on intense feelings of inadequacy.  His self-concept is seeing himself as socially inept, personally unappealing and inferior.  His hypersensitivity to criticism would include self depreciation and a tendency to "give up."  His depression is ongoing and will not respond well to medication.  He has pervasive fatigue, poor concentration, poor ability to make decisions and ongoing feelings of hopelessness.  His thinking is generally negativistic.  He is consumed with a pessimistic outlook of the future.

[AR at 529.]  For all these reasons, I readily conclude that the ALJ's rejection of the opinions of NP Allan and Dr. Miller with respect to claimant Dixon's meeting Listing 12.08 is not well supported and warrants a remand for further consideration.

**Medical Opinion Evidence**

Dixon argues that remand is required because the ALJ erred in evaluating medical opinion evidence from a number of different doctors in the record.  Because remand is required by the ALJ's handling of NP Allan and Dr. Miller's evaluations of Listing 12.08 (a contention repeated in this broader second issue Dixon raises), I won't spend much time addressing this second argument, or series of arguments, as applied to various other doctors' opinions.  I've already concluded that the ALJ failed to give adequate consideration to the opinions of NP Allan and Dr. Miller.  Given the signature of Dr. Miller on the Psychiatric Review Technique and Mental Residual Functional

7

Capacity Assessment, the ALJ had before him the opinions of an acceptable treating medical source, which were entitled to substantial, if not controlling, weight absent the articulation of specific good cause to reject them. 20 C.F.R. §404.1527(c)(2). As I previously explained, the ALJ did not give good cause and his rejection of the opinions was not supported by substantial evidence.

I will briefly state my further agreement with Dixon's critique of the credit the ALJ gave the opinions of the non-examining state agency psychological consultants. The ALJ adopted the determinations of the state agency psychological consultants as to the "B" criteria of the listings. [AR at 19, 15, 87.] In explaining his decision to give their opinions "great weight," the ALJ notes only two ways in which the opinions are consistent with the medical record and are well supported, namely that they are consistent with Dixon's response to medications and limited psychiatric treatment. [AR at 19.] The ALJ makes no citations to the medical record to illustrate his points.

But citations to the contrary are relatively easy to make. Dixon's treating nurse practitioner, who "treated Mr. Dixon more than all of the 'acceptable medical sources' combined," noted that his depression responded poorly to treatment by medication. [AR at 516, 529]. And in response to Dixon's argument, the Commissioner does not dispute that – contrary to the ALJ's suggestion that Dixon had "limited psychiatric treatment" – Dixon was "treated at Four County Counseling Center at least 45 times between 2012 and 2015." [DE 21 at 22.] Upon remand, further consideration should be given to justifying any weight given to the consultants' opinions, particularly in view of

8

their conflict with the opinions of Dixon's treating nurse practitioner and psychiatrist.

## Conclusion

An ALJ must build a logical bridge from the evidence to his conclusion. *Brown v. Colvin*, 845 F.3d at 251; *Ghiselli v. Colvin*, 837 F.3d 771, 778 (7th Cir. 2016). The ALJ has not provided a logical explanation linking the evidence to his determinations that Larry Dixon's impairments do not meet or medically equal one of the listed mental impairments set out in the regulations. Even using the applicable deferential standard of review, I conclude that the ALJ's rejection of the opinions of treating nurse practitioner Gary Allan and treating psychiatrist Kathleen Miller is not supported by relevant evidence such as a reasonable mind might accept as adequate to support his conclusions. *Moore*, 743 F.3d at 1120-21. The Commissioner's final decision denying Dixon's application for disability benefits will be reversed and remanded for further proceedings consistent with this opinion.

**ACCORDINGLY:**

The final decision of the Commissioner of Social Security denying plaintiff Larry Donald Dixon's application for Social Security Disability benefits is REVERSED AND REMANDED for further proceedings consistent with this opinion.

The Clerk shall enter judgment in favor of plaintiff and against defendant.

**SO ORDERED**.

ENTERED: September 10, 2018.

                                                        /s/ Philip P. Simon  
                                                    **PHILIP P. SIMON, JUDGE**